## 9769

### SPIVEY v. CONWAY LUMBER CO. *ET AL.*

#### (93 S. E. 246.)

1. TRUSTS—CONSTRUING INSTRUMENTS TOGETHER.—Where a deed and a declaration of trust by the grantee to the grantors were made on the same day and constituted one transaction, they must be read together, and construed as one instrument.

2. TRUSTS—TRUST IN LAND—RESERVATION OF RIGHT TO TIMBER.—M. died intestate, leaving six heirs at law. They, by deed in the usual form without any mention of the timber, conveyed the fee in the land to M. On the same day M. executed to the heirs a declaration that he would hold the unsold portions of the premises in trust for the use and benefit of the heirs, etc., "saving and excepting therefrom all and singular the merchantable timber of every kind and description upon such premises." It further provided that the timber should be sold, and that after sale the proceeds, after retaining the attorney's fees, etc., would be turned over to the heirs, and also that the trustee would cause the lands to be surveyed, etc., and that he would make separate deeds therefor to each of the heirs "subject to the reservation of timber and rights of way hereinbefore made." *Held*, reading the declaration and deed together, that M. was trustee of the title in the land and timber, and that the timber was not excluded from the beneficial interest of the heirs.

3. TRUSTS—TRUST IN LAND—RESERVATION OF RIGHT TO TIMBER.—After the execution of the deed and declaration of the trust M. proceeded to execute the trust by conveying land involved to one of the heirs, "saving, excepting and reserving out of and from the operation of this deed all merchantable timber of every kind and description upon such premises." *Held*, that the reservation did not defeat the gran-

tee's right to her share of the timber on the land, as the obvious purpose of the grantor was to follow his declaration of trust and preserve in himself the right to sell the timber and divide the proceeds among all the beneficiaries, and not defeat the grantee's equitable right created by the prior instruments.

4. TRUSTS—TRUSTEE'S TIMBER DEED—RIGHT OF BENEFICIARY TO ENFORCE TIME LIMITATION.—Where trustee deeded lands to *cestuis que trustent,* reserving timber and power to sell same for their use and benefit, a subsequent sale of such timber did not preclude beneficiary or his grantee from asserting title to timber after time limit for cutting same had expired; the beneficial interest in timber not vesting in trustee. .

Before SEASE, J., Conway, April, 1916.    Reversed.

Action by D. Allen Spivey against the Conway Lumber Company and others.    Judgment for defendants, and plaintiff appeals.

The declaration of trust involved is as follows:

I, Byron B. Moulton, Boston, in the State of Massachusetts, send greeting:

Whereas, on or about the 23d day of August, 1904, Rufus G. Melson, Frances Moulton, William P. Melson, Elva Melson, Edith A. Pittman and Katie M. Galbraith, heirs at law of William P. Melson and Mary F. Melson, lately deceased, by proper deed made under their hands and seals, did convey to me, the said Byron B. Moulton, all and singular, the certain plantation and tract of land containing in the aggregate six hundred (600) acres, more or less, situate near the town of Conway, in the county of Horry, in the State of South Carolina, known as the former residence and plantation of the said William P. Melson, deceased, and also a certain parcel of land situate in the town of Conway, in the said county and State, being a part of lot number 33, of which Mary F. Melson died seized and possessed, and fully described in said deed, for the expressed consideration of ——, being the amount of outstanding liens and incumbrances against said property.

Whereas, by sale of a portion of said premises, to wit: Of the said parcel or part of lot number 33, as aforesaid, I, the said Byron B. Moulton, have received in cash an amount in money equal to that paid out by me in settlement of the aforesaid incumbrances upon the said premises lacking approximately the sum of two hundred and fifty ($250) dollars.

Now, know all men, that I, the said Byron B. Moulton, do, by these presents, make known, admit and declare that upon the payment to me of the said sum of (approximately) two hundred and fifty ($250) dollars, with interest thereon from this date, together with all counsel fees, taxes, costs, charges and expenses already incurred by me, and such as may be hereafter incurred in and about the said premises, with the legal interest upon the said charges, if any may be due, within thirty (30) days from date hereof by Rufus G. Melson, Frances Moulton, William P. Melson, Elva Melson, Edith A. Pittman, and Katie M. Galbraith, that I will hold all and singular, the unsold portion of said premises, to wit: the said plantation and tract of land in said deed described, and to which reference is craved for a more particular description thereof, in trust for the use and benefit of the aforesaid Rufus G. Melson, Frances Moulton, William P. Melson, Elva Melson, Edith A. Pittman and Katie M. Galbraith, their heirs and assigns, saving and excepting therefrom, all and singular, the merchantable timber, of every kind and description, upon the said premises not heretofore sold by said William P. Melson in his lifetime, together with all necessary and proper rights of entry for ingress and egress, ways, rights of way for teams, vehicles, railroads or tramroads for the cutting and hauling of said timber at any time hereafter. But whether the said sum or sums of money be paid me within the said thirty (30) days by the beneficiaries hereinbefore named, or not, I further stipulate and declare that in order to aid and benefit the aforesaid Rufus G. Melson, Frances Moulton, William P. Melson,

Elva Melson, Edith A. Pittman and Katie M. Galbraith, I will cause the timber hereinbefore reserved upon the said premises to be sold by my attorney, Robert B. Scarborough, or such other attorney or agent as I may name, in a fair and equitable manner, as expeditiously as practicable, and according to my best judgment and in accordance with my instructions, and the proceeds thereof, after first retaining for myself the said sum of (approximately) two hundred and fifty ($250) dollars, and all attorney's fees, taxes, costs and expenses incurred herein and in the sale of the said timber, with legal interest thereon (if said sum shall not have been otherwise paid me), I will pay over to the said Rufus G. Melson, Frances Moulton, William P. Melson, Elva Melson, Edith A. Pittman and Katie M. Galbraith, their heirs or assigns, in equal shares and proportions, reserving, however, out of such money going to any particular beneficiary, such amount of money as may be due me by him or her upon any account.

And I do further make known, admit and declare that upon the acceptance by said Rufus G. Melson, Frances Moulton, William P. Melson, Elva Melson, Edith A. Pittman and Katie M. Galbraith, beneficiaries, of the terms hereof, within thirty (30) days, as hereinbefore provided, I will cause said land and premises to be surveyed as soon as practicable and the same valued and appraised by three or five commissioners or appraisers to be selected by said Rufus G. Melson, Frances Moulton, William P. Melson, Elva Melson, Edith A. Pittman and Katie M. Galbraith, or a majority of them, and the same divided as nearly as possible into parcels of equal value, and the said parcels to be apportioned and selected by said parties by lot or agreement among themselves, and upon said allotment and selection being made, that I will execute and deliver to said aforesaid parties, their heirs and assigns, a conveyance in fee for the parcels so selected by them or allotted to them, subject to

the reservation of timber and rights of way hereinbefore made.

But, this declaration of trust is upon the express condition that said Rufus G. Melson, Frances Moulton, William P. Melson, Elva Melson, Edith A. Pittman and Katie M. Galbraith, beneficiaries herein, shall within thirty (30) days from this date pay to me, the said Byron B. Moulton, the said sum of two hundred and fifty dollars (approximately), and the costs and charges aforesaid, or by agreement in writing, duly entered into by them, contract to and with each other to accept the benefits of this declaration of trust upon the terms hereinbefore stipulated and co-operate in the division of the said premises in manner and according to the plan and terms aforesaid.

And I further declare and stipulate that until the said premises shall have been fully divided and apportioned, according to the aforesaid plan, that I will retain and hold the entire and absolute possession and control of the said premises, free from any liability to account to the said beneficiaries hereunder for any rents and profits.

All admissions, declarations and covenants herein made by me shall be binding upon my heirs, executors, administrators or assigns.

In witness whereof, I have hereunto set my hand and seal, this twenty-third (23d) day of December, A. D. 1904, and in the one hundred and twenty-ninth (129th) year of the sovereignty and independence of the United States of America.   Byron B. Moulton.   (L. S.)

The part of the decree directed to be reported is as follows:

It is admitted that the deed of the Melson heirs vested in Byron B. Moulton title to the land and timber.   The declaration of trust made by Moulton declared that he would hold the land in trust for the Melson heirs, but expressly excepted the timber and rights of way over the land for the cutting and removing of the same at any time thereafter.

3—108.

On April 4, 1905, when he conveyed to Edith A. Pittman the land described in the complaint, he expressly excepted from the operation of the deed all merchantable timber of every kind and description upon the premises.

I construe this deed not only according to its terms, but from all the evidence submitted to me, as conveying to Mrs. Pittman only the land, and retaining in Moulton the absolute right to the timber and rights of way specified in the deed. Therefore, Mrs. Pittman never had any title to the timber, and while her deed to the plaintiff, made in 1909, contained no exceptions, I hold that he was affected with a notice furnished by the public records of Horry county that Mrs. Pittman was not the owner of the timber. Indeed, Mrs. Pittman's conveyance to him expressly referred to the deed under which she sold, and its record.

It follows that, as Mrs. Pittman could not convey what she did not own, the plaintiff acquired no title to the timber and is not entitled to maintain this action.

Counsel for the plaintiff insisted at the hearing that, even if it should be found that the timber was excepted in the several conveyances referred to, yet under the terms of the declaration of trust, and the agreement subsequently entered into between the Melson heirs and Byron B. Moulton, the latter was in fact and in law trustee for the said heirs, that the deed made by Moulton to Freeman conveyed the timber for a limited time only; that the time limit has expired, and that the title to the timber has reverted to the Melson heirs, and the plaintiff, holding under Mrs. Pittman, one of the heirs, should be remitted to her rights and should be allowed to maintain this action. Having reached the conclusion that the plaintiff has failed to prove title to the timber and is not entitled to maintain this action, it is unnecessary to decide the other questions presented in argument.

Under the authority of the decisions of the Supreme Court of South Carolina, I hold that the fee in the timber

was retained by Moulton when he made the deed to Mrs. Pittman. Subsequently he conveyed the timber on the entire tract to W. A. Freeman for a limited time. Whether that time has expired is not now important to inquire. Whether the defendant, Raper, has title to the timber and privileges claimed does not concern plaintiff.

Plaintiff's exceptions:

(1) That his Honor, the presiding Judge, was in error, it is respectfully submitted, in construing the declaration of trust made by Byron B. Moulton as making him trustee for the land only, as distinguished from any interest in the merchantable timber that might revert to him, or as to the proceeds of said merchantable timber, or any timber right or interest that might be left in him after he had been paid the sum mentioned in said declaration of trust; but he should have held that this instrument denominated, as the declaration of trust, showed on its face painly and unequivocally that Byron B. Moulton held both land and timber in trust for the heirs at law of William P. Melson, Sr., and that the only purpose of making said conveyance to Byron B. Moulton, and his declaration of trust, and the exception therein in relation to the merchantable timber on said land, was to provide for repaying to the said Byron B. Moulton the balance due him by the estate, and the balance that might be due him by some of the individual heirs at law for sums advanced to them by him. The recital contained in said declaration, to the effect that Byron B. Moulton, in order to aid and benefit the said Edith A. Pittman and others, that he would cause the timber reserved therein to be sold in a fair and equitable manner as expeditiously as practicable, according to his best judgment and according to his instructions and the proceeds of the same, after first retaining to himself the sum of $250 with all fees and expenses, he would pay over to the said Edith A. Pittman and others, heirs at law of William P. Melson, Sr., in equal shares and proportions, less any amounts that said individual heirs

might owe to him for advances, was sufficient to show that he was not to retain in either the land or the timber any beneficial interests beyond that especially named, to wit, the repayment to him of all amounts due him, and this was sufficient to show that the intention of the instrument, taken with all of the other instruments, was to make him a trustee for the benefit of said heirs, and should have held that, as his trust had been executed when this action was brought, his rights had vested in the beneficiaries or their successors in interest, and he should have held, therefore, that the plaintiff herein had title to both the land and the timber thereon being, if the time limit for removing the same had expired.

(2) That he erred in holding that Byron B. Moulton was vested with the absolute title to both land and timber, and should have held that he took it as trustee, not only as to the soil itself, but as to any rights in the timber that might revert to him after the purpose of his trust had been carried out.

(3) He should have held that the exception contained in the deed of April 4, 1905, from Byron B. Moulton to Edith A. Pittman was only intended for the protection of the person to whom he, the said Moulton, had conveyed said timber, and that he was acting as trustee in behalf of Edith A. Pittman and her successors in interest and grantee in making said exception, and could not change the nature of the trust which he had imposed upon him.

(4) That he erred in holding that Mrs. Pittman never had any title to the timber, and that although her deed to the plaintiff in 1909 contained no exceptions, still the plaintiff was affected with the notice furnished by the public records; but he should have held that Edith A. Pittman, as a *cestui que trust* under the declaration of trust before mentioned, as soon as the purposes of the trust had been performed, became vested by operation of law with any right or interest in said timber that otherwise would have reverted to Byron B. Moulton after the expiration of the time limit for cutting and removing said timber, and should have held

that the plaintiff under the deed of general warranty from Edith A. Pittman was entitled to all of her rights, and, therefore, vested with good title to said timber, provided the time limit had expired.

(5) The agreed statement of facts having provided that the question of whether the time limit had expired was to be settled by the Court, his Honor was in error in disregarding the other questions raised by the agreement of facts, and he should have decided the question of the time limit, and if he found that it had expired, he should have held that the plaintiff was entitled to a permanent injunction, restraining the defendants, their agents and servants, from cutting and removing any of the timber from said land, and their exercising any rights of ingress or egress over said land; and he, therefore, was in error in holding that it was unnecessary to decide the other questions presented in the agreed statement of facts and in the argument.

(6) That his Honor erred in holding that the fee in the timber was retained by Moulton when he made the deed to Mrs. Pittman; but he should have held that Byron B. Moulton was bound by the terms of his trust, and so, also, was any person to whom he conveyed the timber and timber rights, as said declaration of trust was duly recorded before the conveyance of said timber, and he should have held that, the time limit in said timber deed having expired and the purposes of the trust having been fulfilled, the timber and the rights of ingress and egress had reverted and vested by operation of law in Edith A. Pittman and her grantee under her warranty deed to the plaintiff herein.

(7) That he was in error in dismissing the complaint and dissolving the temporary order of injunction, but he should have granted a perpetual injunction against the defendants, prohibiting the cutting and removing of said timber.

(8) That he erred in directing the clerk of the Circuit Court to enter upon the docket against each of several simi-

lar cases to this the words, "Heard April 6, 1916," as it was only an agreement of counsel with which the Court had no concern that those other cases should be controlled by the event in this particular case.

*Mr. H. H. Woodward,* for appellant, submits: *Purchaser took subject to trust:* 100 S. C. 220. *Trust relationship:* 39 Cyc. 57, 63, 528; 63 Ind. 129; 81 S. C. 506. *No title after time limit:* 90 S. C. 176; 47 L. R. A. (N. S.) 883.

*Mr. Robert B. Scarborough,* for respondent, cites: *As to title to timber:* 46 S. C. L. 314; 80 S. C. 106; 89 S. C. 341.

July 16, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The appeal is from a decree of the Circuit Court made upon an agreed statement of facts. The facts all rest in record evidence.

The plaintiff is the admitted owner of the fee to the 157 acres of land involved. He also claims to be the owner of the growing timber upon the land; the defendants also claim to own the timber, and that is the issue betwixt them. The plaintiff sued to enjoin the defendants from cutting the timber; and the Circuit Court dismissed the complaint.

Let the exceptions, eight in number, be reported. We shall keep within them, and no more; for the appellant has argued but two questions.

The controversy arises out of these circumstances: Some 600 acres of land, of which that involved is a part, was owned by W. P. Melson. He died intestate and left six heirs at law. On August 23, 1904, they conveyed the fee of the land to Byron B. Moulton, who had married one of the heirs. On the same day Moulton executed to the heirs a declaration of trust, and four months thereafter the heirs

accepted the declaration.  On March 21, 1906, Moulton conveyed to Freeman the timber growing on the lands, and limited the time for its removal to ten years from that date for the timber on swamp land, and five years for the timber on upland; the defendants claim under Freeman; on April 4, 1905, Moulton conveyed to one of the heirs at law, Pittman by name, the 157 acres involved in this controversy. On 16th October, 1909, Pittman conveyed to the plaintiff.

The pith of the Circuit decree is included in the six paragraphs at folios 80 to 85 of the case; let so much of it be reported.  The Court there declares:

"It is admitted that the deed of the Melson heirs vested in Byron B. Moulton title to the land and timber."

We venture to think the fundamental mistake in the Circuit decree is that the Court regarded the several conveyances as legal titles, and judged the priorities accordingly.

The deed from the heirs to Moulton and the declaration of trust by Moulton were made on the same day; they constituted one transaction, and they must be read and 1, 2 construed together as one instrument of writing would be construed.  The preface to the declaration of trust reads:

"Whereas, on August 23, 1904, Rufus G. Melson *et al.* * * * by paper deed made under their hands did convey to me, etc., * * * for the expressed consideration of * * * being the amount of outstanding liens and incumbrances against said property. * * * Now, know all men * * * I * * * declare," etc.

The two instruments are thus joined together.  The deed is in the usual formal words; it makes no reference to timber; the expressed consideration is $1,750; the declaration of trust is unusual in expression, and it needs only to be reported.

If the declaration of trust had been written into the same paper with the deed, as ideally it was, then it is manifest

that the heirs only thereby vested in Byron B. Moulton title to both land and timber, but in trust.

It is true, one clause in the declaration of trust "saves and excepts therefrom all and singular the merchantable timber of every kind and description upon the said premises." But a subsequent and closely following clause of the instrument, expressly referring back to the "timber hereinabove reserved" the trustee, "in order to aid and benefit the" *cestuis que trustent,* stipulated and declared that the timber would be sold by his instruction and through his agent, "and the proceeds thereof * * * paid over to the *cestuis que trustent."* And by a yet subsequent clause of the instrument, the trustee declared he would cause the lands to be surveyed, appraised, and divided into separate parcels, and that he would make separate deeds thereof to each of the heirs, according to his or her allotment; that is to say, he would effect a partition.

It is true the trust instrument adds just thereafter the following words, to wit: "subject to the reservation of timber and rights of way hereinbefore made." That is the reservation we before quoted. These words, however, but conform to the previous covenant of the trustee to sell the timber and pay the price to the beneficiaries; they do not exclude the timber from the beneficial interest of the *cestuis que trustent.*

It is, therefore, perfectly plain from the whole two instruments, read as one, that Moulton was trustee of the title to land and timber; that the heirs at law, his wife one of them, were the *cestuis que trustent;* that the consideration expressed in the deed was "the amount of outstanding liens and incumbrances against the said property;" that the trustee was to pay the liens and incumbrances; that he did pay them by a sale of portions of the land; that he was then to sell the timber and pay the price of it to his *cestuis que trustent;* that he was last of all to divide the land betwixt the beneficiaries. The "reservation" of the timber in the

declaration of trust which we first referred to was in fact and in law no reservation at all of any beneficial interest in Moulton, for Moulton concurrently therewith dedicated the timber by a trust to those who by the same instrument had equitable title to the land under the timber; it was a dedication to uses and not a reservation.

In the next year after the transactions just referred to, to wit, after the execution of the two instruments of writing called the deed and the declaration of trust, Moulton proceeded to execute the trust by dividing the land betwixt the beneficiaries, and on the 4th April, 1905, he conveyed the land involved to Pittman, who was one of Moulton's six children. Spivey took from Pittman. In that deed to Pittman is this clause: "Saving, excepting and reserving out of and from the operation of this deed all merchantable timber of every kind and description upon said premises, with all necessary rights of entry and rights of way for man and teams, wagon roads and team roads, over and across said land for the cutting and removing of said timber."

The defendants rely on that clause to defeat Pittman's right to the timber; and the Circuit Court so concluded. But the obvious purpose of the grantor was to follow the declaration of trust; it was to preserve in him the right to sell the timber and divide the proceeds betwixt the beneficiaries; it was not to defeat Pittman's equitable right created in her by the instruments before made. In equity, and in ideality, Pittman had the right to her share of the proceeds of sale of the timber, notwithstanding the quoted clause in the deed she took. The clause was in harmony with the entire transaction theretofore had, and not hostile to it. Now, then, the trustee plainly had the right to sell the timber to Freeman, or to anybody else, and to divide the proceeds betwixt the beneficiaries; that is what he undertook to do in the declaration of trust; and when he sold the timber to Freeman in March, 1906, he was but executing his trust.

And when the trustee did that, and had the timber been cut, and had the money been paid to the beneficiaries, then the trust would have been executed, and the transaction done. In this view it is not relevant to inquire whether Freeman had any notice of the declaration of trust for the trustee by the words of it had the power to sell the timber to him. It does not appear from the record what the trustee has completely done towards the performance of his trust; nothing appears except the things we have adverted to.

If the timber has not been cut, or some of it—and we conclude that to be so from the circumstance of this action—then the second issue submitted to the Circuit Court, and not decided, may become highly relevant, to wit: "Has the time limit expired, and should the defendant be denied the right to enter the land now claimed by the plaintiff?"

For if the timber or some of it has not been cut, and the defendant's right to cut has expired under the terms of his deed, then the question arises, Who has the ownership, legal or equitable, of the timber so growing? Certainly not the defendant; his right depends upon the deed he took, and is limited by the deed. If the right of the defendant to cut is gone, then the timber as part of the land belongs to him who owns the land, and that is confessedly the plaintiff. The contention of the respondent that "the reversion is to Byron B. Moulton" is obviously untenable. Moulton was never anything but a trustee; he never had any beneficial interest in the land or the timber. The utmost Moulton could now claim would be the right, under the declaration of trust, to sell the timber and pay the proceeds to the beneficiaries; and his right to now do that depends upon whether he has ended and abandoned the trust. But Moulton is not a party, and we decide nothing as to his further rights in the premises.

It is manifest the defendants have no rights, if their time in which to cut has expired. Our judgment is that the decree below is reversed; and the cause is remanded there to carry out the views we have expressed.